May it please the court, my name is Gretchen Holderman and I am here today on behalf of I would like to reserve five minutes for rebuttal. Your Honor, this is a pretty simple case. We have here an ATF agent who gathered a lot of information, talked to a lot of witnesses and certainly tried to put it all together. Unfortunately, I would submit to you that Agent Hartnett did not and could not connect the dots here. Agent Hartnett did not talk to a single witness who saw Toriano Goodwin with a gun anywhere. More importantly, he did not talk to a single witness that he knew, based upon his experience, to be a reliable witness. The trail here went from first finding a stolen gun on Richard McCormick, then going back to the owner of that stolen gun, Mr. Mauser, to determine that it was in fact his gun. It was a machine gun and it was properly registered to Mr. Mauser. Then there was an interview of a Brian White who claimed to be a friend of the thief, Richard McCormick, and said that he wanted to but he couldn't afford the gun when it was offered to him. Then the trail went to arresting this Brian Watson, who in fact is the only witness who ever referenced Toriano Goodwin at all. Mr. Watson claimed to have brokered a deal between Mr. McCormick and Mr. Toriano Goodwin for the sale of this weapon. That is the only mention at all of Mr. Goodwin and the weapon. Notably, Mr. Watson never claimed to see the transaction happen, never said that he saw or knew or that he witnessed Toriano Goodwin with a gun, or that he knew that Toriano Goodwin had that gun at his house. Finally, the trail went to Detective Hartnett, figuring out where Toriano Goodwin lived. With all of this information, Agent Hartnett went to the magistrate and got a warrant. We did include the entirety of Agent Hartnett's affidavit in our brief and we would submit to you that those affidavit statements do not support probable cause. They did not form a substantial basis in the District Court's review of the magistrate's issuance of that affidavit. Even though he was an experienced detective, his training experience alone did not equate with probable cause to believe that Toriano Goodwin was a felon in possession, or probable cause to believe that the subject weapon was located in Mr. Goodwin's house. Indeed, the magistrate's duties in reviewing a warrant application have a lot to deal with common sense and practicality, but I would submit to you that no amount of practicality could put these factors together to relate enough to get probable cause to determine that Toriano Goodwin had a weapon and had this weapon in his house. I would submit to you that Agent Hartnett had a hunch, and indeed it was a good hunch, but that does not go beyond the requirements of the Fourth Amendment requiring that probable cause existed and that furthermore the magistrate would have had a substantial basis to determine or conclude that there was probable cause. Why wasn't there more than a hunch by virtue of the fact that this informant, who was named and talked to by the police, said that he brokered the sale of this machine gun to the defendant? That's not just a hunch, is it? That's somebody saying he bought the weapon. Well, it is more than a hunch, yes, Judge, but he did not state that he was present for this sale or that it actually happened. He didn't broker the sale. Why isn't that actually happening? Wouldn't it at least be an inference? Yes, Judge, it would be an inference, but there was nothing... In the ordinary course of events rely on? It has to be more than that, Judge, because the police are bound to know and be able to test the credibility of that information. Beyond that one interview, the evidence or the record shows that Agent Hartnett did not know or have any other contact with Brian Watson other than that interview. So it was just that statement by a non-reliable person was the only thing that the police relied on.  Because his reliability as an informant hasn't been tested, and the law requires that it can't be a mere conclusion by the police based upon information, but the persons that they rely on have to be known to them. Well, their name was known to him. It's not an anonymous person. Right, but not known to him in this... Calls up and says so-and-so has a gun. That's troublesome. That's not what this is, right? No, but it's not known to him to be a reliable informant. They knew his name. He had been arrested. He provides this information, but they had never used him in another bust or any kind of other investigation where they could have said, yes, Judge, yes, Magistrate, this guy is a reliable informant. We've used him before. In fact, the only reliable informant mentioned in that affidavit was the fellow that set up the drug bust, a drug bust, with this Brian Watson that got him under arrest. I think the police fell upon this information, and yes, the agent had a very good hunch, but that does not alleviate the police's responsibility to abide by the Fourth Amendment. If the affidavit is judged on what it does contain and not what it lacks, as is correct and the government suggests, and as did this court in U.S. v. Allen, here the district court had to find that the affidavit fell short of providing a substantial basis to conclude that there was probable cause. Now, the government claims that there's cross-cooperation within the affidavit. However, I would submit to your honors that the cross-corroborated evidence had nothing to do with Toriano Goodwin having a gun, but the cross-corroborated evidence was only that the guns were stolen, that the guns had been previously locked up, and that the machine gun had intrinsic value. These cross-corroborated facts do not go to the heart of obtaining this warrant for the arrest and conviction, ultimately, of Toriano Goodwin for his possession of these weapons. There was not a single witness that gave information that was known to be reliable, and Judge Rogers, that's what I'm trying to say. There was not a single witness that saw Toriano purchase the gun or possess a gun, and not a single witness that saw any gun at Toriano Goodwin's residence. Now, with that point, I would note for the court that I do not feel that there was any linkage to the actual residence, and under the law, there has to be a probable cause that the person is in possession of the object or criminal tool, and second, that the object or criminal tool is in the particular place to be searched. And here, there was nobody who said that they even knew where Toriano Goodwin lived, and I think, in fact, it's quite clear that Agent Hartnett simply looked him up on the BMV and figured out where this fellow lived, and then used that information to get a search warrant. Now, I understand that these weapons do have value, and that the district court relied upon the fact that these valuable items are often kept close to the persons who possess them. However, I would submit that it would just be as likely for a person in possession of a valuable machine gun to keep them at a clubhouse, a shed, somebody else's house, buried, any other place, not necessarily their residence, and I don't believe that there's enough connection to have supported an affidavit or a warrant for this particular residence of Toriano Goodwin. I would request this court – I'm happy to answer any other questions, but I would submit that the district court did not have enough upon which to find probable cause and request the court to reverse the decision denying the motion to suppress. Thank you. Thank you. Kendra Klum for the United States. May it please the court, I'm replacing AUSA Deskins, who retired last week. The district court properly concluded in this case that the magistrate has substantial basis for finding probable cause. Viewing the evidence in the light most favorable to the government, the record shows that the magistrate was reasonably exercising his discretion in finding probable cause in that the informant, who, as Judge Rogers noted, is named Kevin Watson, was reliable and provided a basis for finding probable cause, that the information provided in the affidavit was not stale, and that finally there was sufficient facts alleged in the affidavit to conclude that there was a nexus between the machine gun being sought and Mr. Goodwin's residence. I'd like to start with the reliability of Mr. Watson. Under both Gates and Allen, as this court is well aware, the court looks at three factors, veracity, reliability, and the basis of knowledge of an informant. And all three of those factors weigh in favor of the probable cause finding in this case with respect to Mr. Watson. As an initial matter, and again, as you already alluded to, Judge Rogers, Mr. Watson's identity was not just known to the agent, but his name was revealed in the affidavit itself. And the naming of the informant, as this court has recognized in two decisions issued just this year in Kinson and Hodge, the naming of the informant attests to his or her reliability and veracity, and goes to the fact that even just the naming of the informant can at times be sufficient to find probable cause, even absent any sort of independent corroboration. Going hand-in-hand with the naming of the informant is the fact that when the agent interviewed Mr. Watson in the face-to-face interview, the agent had the opportunity to- Following the controlled purchase of heroin. Yes, Your Honor. On October 31st, Mr. Watson was implicated in the controlled buy. He made a statement at that time about buying guns from Mr. McCormick, but that he'd gotten rid of those guns. Later, when the agent interviews Watson on December 15th, Mr. Watson makes a consistent statement, again talking about Mr. McCormick as selling guns. Mr. Watson then, at that time, in the face-to-face interview, at which point, the agent can use that opportunity to assess his credibility and his veracity, Mr. Watson admits in a statement against his penal interest that he brokered that sale of the machine gun. Now, as we know from Harris, a statement against penal interest weighs in favor, another factor in favor, of Mr. Watson's credibility. And also, another aspect of the fact that it was a face-to-face interview, and again the naming of Mr. Watson, is that just by providing information to the police, even regardless of whether it was a statement against his interest, Mr. Watson thereby exposed himself to potential penalties for providing false information. In addition, Mr. Watson's basis of his knowledge is firsthand knowledge, as he was the one who brokered the sale from McCormick to Goodwin. That, again, is another factor that this court looks upon favorably when assessing a known informant's credibility. Again, another factor, contrary to what Goodwin implies, there was sufficient cross-corroboration of Mr. Watson's statement, even going beyond the fact that he's already a known and identified informant. Whether or not Mr. Watson was able to place the machine gun in Mr. Goodwin's home, there's sufficient evidence that shows that the agent was actually able to connect the dots throughout the affidavit, and that in turn the magistrate judge was able to see that connecting of the dots when he made his probable cause determination. For example, Brian White, in the statement taken by law enforcement, Brian White, another known identified informant, makes the comment that Mr. McCormick emailed him offering to sell two weapons, a machine gun and then another weapon, I believe it was a pistol. Mr. McCormick said that pistol was stolen. So that is consistent with the fact that Mr. Watson, at least a couple weeks, a month later, is saying that Mr. McCormick was in the business of selling weapons. The description of the weapon and the uniqueness of the weapon, which is a machine gun, is consistent between Mr. White's statement and Mr. Watson's statement. Also, the fact that it was stolen, again, is consistent. And then I think what's important, too, to highlight for the court about Mr. Watson's statement is the fact that he reports Mr. Goodwin as saying Goodwin intended to keep that weapon because of its uniqueness and presumably because of its value. And we know that this is a valuable weapon, not just from Mr. White's statement when McCormick tells him this is worth $9,000 to $12,000, I'll give it to you for $1,500. Again, connecting the dots, a couple months perhaps have passed, we're not sure of the exact time, and now Mr. McCormick, presumably getting a little more desperate to get rid of this hot weapon, has reduced his price. So by the time Watson brokers the sale, the price is now $500 in cash plus cocaine. All of those statements together and all those aspects of the case show that Watson here is proven reliable, not a proven reliable in the sense of being used in past cases, but has demonstrated the aspects of a reliable and credible informant. I'd like to turn quickly to the staleness issue, which defense counsel touched briefly on. Here there's plenty of evidence in the affidavit, and particularly when viewed in light of the case law that's cited in our brief here, that the evidence is far from stale and that the magistrate judge was properly exercising his discretion, far from arbitrarily exercising his discretion, in finding that there was probable cause that the machine gun would still be in Goodwin's residence. First, we know from the spikes factors that there's the character of the crime, and I believe in a case that Judge Clay, you were on in Pritchett, that the court has already noted that this is a continuing offense. The possession under 922G and then the possession of an unregistered machine gun are continuing offenses, so it's not similar to cases which might be the distribution or the sale, which might not necessarily cover as long of a time period with respect to staleness. Most importantly for the staleness inquiry, Goodwin says to Watson, who we know is reliable at this point under those Gates and Allen factors, Goodwin says to Watson, I intend to keep this gun. It's unique, it's cool, it's a machine gun, hard to get, we know that it requires a special license, that's in the affidavit, it's worth a lot of money. Goodwin intends to keep that weapon, and we also know that the maximum time period that Goodwin's had this weapon at this point is just over three months. Assuming, we know on September 3rd, Brian White received the offer of sale, and then some point before December 15th, Watson brokered the sale from McCormick to Goodwin. So that's the maximum time period, just over three months, that's a lapse, and that falls well within the boundaries set by this court in cases such as Lancaster, Pritchett, and also VanderWheel, a case that's not cited in our briefs, Your Honor, but that was issued just this past month on November 13th, and the time frame relevant to that case was seven months. So here, again, we fall well within prior case law. And finally, just to touch on one of the last issues that was raised, or the last issue that was raised by Goodwin, is the nexus between the weapon sought and the warrant and Goodwin's home. Agent Hartnett, as appellant recognized, is an experienced agent. He specialized in firearms. We know from cases such as Abood where there, in that case, an FBI agent who specialized in financial crimes, the court found it was reasonable for the lower court to rely on his opinion and conclusion about where evidence would be found. Just as the same here, again, also looking to that VanderWheel case that was recently issued, it's reasonable for the court to look to an experienced agent's determination that the machine gun will be found in the home, as is also recognized in the Smith case. And so, Your Honors, in conclusion, I would ask that you affirm the lower court's decision, the district court properly concluded that the magistrate has substantial basis for finding probable cause given the reliability of the known, named informant, Mr. Watson, given that the information was far, far from stale under this court's case law, cited in our brief, and finally that there was ample evidence of a nexus between Mr. Goodwin's residence and the fact that he was in possession of that firearm. So I know I'm a little, I have time left, but if the court has no questions, I would ask you to consider our briefs and affirm the lower court. Thank you. Thank you. Just very briefly, Your Honors, I would submit to you that this court's decision in Allen actually supports our position, as the Allen court specifically stated that in evaluating the veracity of a witness, this honorable court has held that where a person named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence in the recent past, a neutral and detached magistrate may believe that evidence of a crime will be found. And I would submit that Agent Hartnett did not and could not attest to the reliability or veracity of Mr. Watson, and I think that's because Mr. Watson was not known to him as an informant in the past. And I would submit to you that the decision of this court in Fraser also supports our position, because this court has held that in the absence of any indicia of the informant's reliability, courts insist, and really they must insist, that the affidavit contain substantial independent corroboration. And of all the things that were corroborated, nothing that Mr. Watson said was cross-corroborated. Thank you very much. Thank you very much. The case is submitted. I believe that's the last case we have upon oral argument.